**No. 14-2178(L); 14-2181; 14-2276; 14-2277**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────────────

**JOHN R. BEHRMANN, NANCY BEHRMANN, DANIEL JOSEPH SCHENDZIELOS, SCHENDZIELOS & ASSOCIATES, LLC, JONATHAN D. MILLER, NYE, PEABODY, STIRLING HALE & MILLER, LLP, LELIA PALMORE WINGET-HERNANDEZ, WINGET-HERNANDEZ, P.C., JOHN F. BLOSS, HIGGINS BENJAMIN PLLC,** Appellants

v.

**NATIONAL HERITAGE FOUNDATION, INCORPORATED**, Appellee

───────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

───────────────────────

**BRIEF OF APPELLEE
NATIONAL HERITAGE FOUNDATION, INC.**

───────────────────────

Erika L. Morabito
Brittany J. Nelson
FOLEY & LARDNER LLP
3000 K Street N.W.
Suite 600
Washington, DC 20007-5109
Telephone:  202-672-5300
emorabito@foley.com
bnelson@foley.com

David B. Goroff
FOLEY & LARDNER LLP
321 N. Clark Street
Suite 2800
Chicago, IL  60654
Telephone:  312-832-4500
dgoroff@foley.com

*Counsel for Appellee National Heritage Foundation, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-2178, 14-2181__ Caption: __Jonathan D. Miller v. National Heritage Foundation, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__National Heritage Foundation, Inc.__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                               ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                          ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
        If yes, identify any trustee and the members of any creditors' committee:
        There is no trustee, as Appellee is a reorganized debtor following a Chapter 11 bankruptcy proceeding. Similarly, there is currently no creditors' committee, as the creditors' committee has been disbanded.

Signature: __s/ Erika L. Morabito__          Date: __November 12, 2014__

Counsel for: __National Heritage Foundation, Inc.__

# CERTIFICATE OF SERVICE
****************************

I certify that on __November 12, 2014__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__s/ Erika L. Morabito__                          __November 12, 2014__
        (signature)                                        (date)

# <u>TABLE OF CONTENTS</u>

<u>Page No</u>.

CORPORATE DISCLOSURE STATEMENT ............................................................

TABLE OF AUTHORITIES ...................................................... iii

JURISDICTIONAL STATEMENT ........................................ 1

STATEMENT OF THE ISSUES ......................................................... 1

STATEMENT OF THE CASE .................................................. 3

I.      After the Bankruptcy Court Finds the Behrmanns in Contempt for Filing Discharged and Exculpated Claims Against NHF and Its Officers Without Leave of Court, the Behrmanns Delay Compliance With Its Mandate to Dismiss the Offending Claims ....................................... 3

II.     The Bankruptcy Court Enters the Per Diem Order After the Behrmanns Disregard the Deadlines of the Contempt Order ......................... 7

III.    The District Court Affirms the Per Diem Order, Finding the Behrmanns' Appeal Frivolous ....................................................... 10

        A.     Initial Briefing of the Per Diem Order Appeal ................................... 10

        B.     The Behrmanns Multiply the Proceedings With a Frivolous Motion to Strike ................................................ 14

        C.     The District Court Imposes Appellate Sanctions ............................... 15

SUMMARY OF ARGUMENT ...................................................... 17

ARGUMENT ....................................................... 20

I.      Standard of Review ....................................................... 20

II.     The Bankruptcy Court Had Jurisdiction to Enter the Per Diem Order ......... 21

        A.     The Behrmanns' Appeal of the Unstayed Contempt Order Did Not Divest the Bankruptcy Court of Jurisdiction to Implement that Order ...................................................... 22

               1.     The Tabulation of the Number of Days the Behrmanns Were Late in Complying With the Contempt Order Is Not an Aspect of the Case Involved in the Contempt Appeal ...................................................... 22

               2.     Courts Universally Recognize that Enforcement of an Unstayed Order Pending Appeal Does Not Implicate the "Aspects of the Case Involved in the Appeal" ......................... 24

i

B. Even if the Behrmanns Could Satisfy the Threshold Inquiry of *Griggs*, the Bankruptcy Court Retained Jurisdiction to Enter the Per Diem Order on Alternative Grounds ...........................................28

    1. The Tabulation of the Number of Days the Behrmanns Were Late in Complying With the Contempt Order Is Collateral to the Issues in Their Appeal of the Contempt Order ...........................................29

    2. The Bankruptcy Court's Entry of the Per Diem Order Would Have Promoted Judicial Efficiency; the Behrmanns Simply Opted For Inefficiency ...........................31

C. Appellants' Reliance Upon a Footnote in a 32-Year-Old Ninth Circuit Decision is Misplaced ...........................................33

III. The District Court Did Not Abuse Its Discretion in Finding that Appellate Sanctions Were Warranted ...........................................36

A. The District Court Did Not Abuse Its Discretion in Concluding that the Behrmanns' Jurisdictional Arguments Were Frivolous .........38

B. The District Court Did Not Abuse Its Discretion in Concluding that the Appeal of the Per Diem Order Was a Needless Multiplication of the Litigation and a Waste of Resources ...............44

    1. The Appeal of the Per Diem Order Could Not Have Had Any Practical Effect, and Thus Amounts to "Recreational Litigation" ...........................................45

    2. The Behrmanns' Justifications for Their Appeal to the District Court Are Baseless ...........................................50

C. The District Court Did Not Abuse Its Discretion by Including Within the Fee Award the $2,747 in Legal Expenses NHF Incurred in Opposing the Behrmanns' Motion to Strike ...................54

CONCLUSION ...........................................57

CERTIFICATE OF COMPLIANCE ...........................................

CERTIFICATE OF SERVICE ...........................................

# TABLE OF AUTHORITIES

**Cases**

*Acevedo-Garcia v. Vera-Monroig*,
  368 F.3d 49 (1st Cir. 2004)................................................................25

*In re Ahmed*,
  420 B.R. 518 (Bankr. C.D. Cal. 2009) ............................................34

*Alessandri v. April Indus., Inc.*,
  934 F.2d 1 (1st Cir. 1991).................................................................48

*Applewood Landscape & Nursery Co. v. Hollingsworth*,
  884 F.2d 1502 (1st Cir. 1989)......................................................42, 49

*Atlantic Cement Co. v. S. Shore Bank*,
  730 F.2d 831 (1st Cir. 1984).............................................................39

*Bank of Canton, Ltd. v. Republic Nat'l Bank*,
  636 F.2d 30 (2d Cir. 1980) ...............................................................42

*Bast v. Cohen, Dunn & Sinclair, PC*,
  59 F.3d 492 (4th Cir. 1995) ..............................................................47

*Beachboard v. United States*,
  727 F.2d 1092 (Fed. Cir. 1984) ........................................................48

*Behrmann v. Nat'l Heritage Found., Inc.* (*In re Nat'l Heritage Found., Inc.*), 510 B.R. 526 (E.D. Va. 2014) ............................................*passim*

*Behrmann v. Nat'l Heritage Found., Inc.*,
  Nos. 14-1541(L), 14-1543, 14-1576 (4th Cir. filed June 3, 2014).............*passim*

*Blue Cross & Blue Shield Ass'n v. Am. Express Co.*,
  467 F.3d 634 (7th Cir. 2006) ............................................................25

*Braley v. Campbell*,
  832 F.2d 1504 (10th Cir. 1987) ............................................48, 55, 56

*Burd v. Walters (In re Walters)*,
  868 F.2d 665 (4th Cir. 1989) ............................................................51

*Co. Doe v. Public Citizen*,
749 F.3d 246 (4th Cir. 2014) ....................................................*passim*

*Coghlan v. Starkey*,
852 F.2d 806 (5th Cir. 1988) ...........................................41, 43

*Cooter & Gell v. Hartmax Corp.*,
496 U.S. 384 (1990).............................................................21

*Cronin v. Town of Amesbury*,
81 F.3d 257 (1st Cir. 1996).................................................42

*Crutchfield v. U.S. Army Corps of Engineers*,
230 F. Supp. 2d 673 (E.D. Va. 2002) .......................22, 31, 40

*Deering Milliken, Inc. v. Fed. Trade Comm'n*,
647 F.2d 1124 (D.C. Cir. 1978)...........................................27

*Devices for Medicine, Inc. v. Boehl*,
822 F.2d 1062 (Fed. Cir. 1987) ..........................................49

*Donovan v. Mazzola*,
761 F.2d 1411 (9th Cir. 1985) ............................................35

*Farmhand, Inc. v. Anel Eng'g Indus., Inc.*,
693 F.2d 1140 (5th Cir. 1982) ............................................27

*Fobian v. Storage Tech. Corp.*,
164 F.3d 887 (4th Cir. 1999) ..............................................18

*In re Grand Jury Proceedings Under Seal*,
947 F.2d 1188 (4th Cir. 1991) ............................................18

*In re Grand Jury Subpoenas Duces Tecum*,
85 F.3d 372 (8th Cir. 1996) ....................................26, 35, 36

*Greater Potater Harborplace, Inc. v. Jenkins*,
No. 90-1462, 1991 U.S. App. LEXIS 11015
(4th Cir. May 31, 1991) ...........................................25, 43

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982)...........................................................*passim*

iv

*Hagel v. Drummond (In re Hagel)*,
184 B.R. 793 (B.A.P. 9th Cir. 1995) ................................................26, 34

*Hager v. Gibson*,
108 F.3d 35 (4th Cir. 1997) ............................................................21

*Hilgeford v. Peoples Bank*,
776 F.2d 176 (7th Cir. 1985) ..........................................................39

*Hunt v. Nuth*,
57 F.3d 1327 (4th Cir. 1995) ..........................................................24

*Lane v. Sullivan (In re Lane)*,
991 F.2d 105 (4th Cir. 1993) ..........................................................56

*Langham-Hill Petroleum Inc. v. S. Fuels Co.*,
813 F.2d 1327 (4th Cir. 1987) .................................................*passim*

*Mays v. Chicago Sun-Times*,
865 F.2d 134 (7th Cir. 1989) ..........................................................43

*Nat'l Serv. Indus., Inc. v. Vafla Corp.*,
694 F.2d 246 (11th Cir. 1982) ........................................................26

*New Horizon of NY LLC v. Jacobs*,
231 F.3d 143 (4th Cir. 2000) .....................................................20, 51

*NLRB v. Cincinnati Bronze, Inc.*,
829 F.2d 585 (6th Cir. 1987) ..........................................................26

*Porter v. Farmers Supply Serv., Inc.*,
790 F.2d 882 (Fed. Cir. 1986) ........................................................42

*Property Movers, L.L.C. v. Goodwin (In re Property Movers, L.L.C.)*,
31 Fed. App'x 81 (4th Cir. 2002) (per curiam) .........................*passim*

*Rains v. Flinn (In re Rains)*,
428 F.3d 893 (9th Cir. 2005) ..........................................................34

*Romala Corp. v. United States*,
927 F.2d 1219 (Fed. Cir. 1991) ......................................................39

*Sherman v. SEC (In re Sherman)*,
 491 F.3d 948 (9th Cir. 2007) ...............................................................34

*Shuffler v. Heritage Bank*,
 720 F.2d 1141 (9th Cir. 1983) ....................................................*passim*

*Simon & Flynn, Inc. v. Time, Inc.*,
 513 F.2d 832 (2d Cir. 1975) ......................................................48, 57

*United States v. Leeson*,
 453 F.3d 631 (4th Cir. 2006) ...........................................................24

*United States v. Montgomery*,
 262 F.3d 233 (4th Cir. 2001) .......................................22, 23, 24, 40

*United States v. Watlington*,
 No. 05-CR-4-1-F3, 2010 U.S. Dist. LEXIS 69340
 (E.D.N.C. July 12, 2010) ..................................................................25

*White v. New Hampshire Dep't of Empl. Sec.*,
 455 U.S. 455 (1982)............................................................................30

**Statutes**

28 U.S.C. § 158(d) ...................................................................................1

28 U.S.C. § 158(d)(2)(A)(iii)................................................10, 32, 33, 51

28 U.S.C. § 158(d)(2)(D) ..................................................................28, 36

28 U.S.C. § 1291 ......................................................................................1

**Rules**

Fed. R. App. P. 28(a)(8)(A) ...................................................................24

Fed. R. App. P. 38..................................................................38, 43, 55, 56

Fed. R. Bankr. P. 7062 ...........................................................................10

Fed. R. Bankr. P. 8020 ...................................................................*passim*

Fed. R. Civ. P. 11 .....................................................................30, 54, 55

4TH CIR. R. 32.1 .......................................................................21, 25

**Other Authorities**

10 COLLIER ON BANKRUPTCY ¶ 9020.04 (16th ed. 2013) ........................................51

JAMES WM. MOORE, 20 MOORE'S FEDERAL PRACTICE §
    303.32[2][b][vi] (3d ed. 2014)........................................................................27

WRIGHT, MILLER, COOPER & STRUVE, 16A FEDERAL PRACTICE &
    PROCEDURE § 3949.1 (4th ed. 2008)................................................................27

## JURISDICTIONAL STATEMENT

Appellee National Heritage Foundation, Inc. ("NHF") agrees with Appellants (collectively, the "Behrmanns") that this Court has jurisdiction pursuant to 28 U.S.C. § 158(d) to hear their appeal from the Bankruptcy Court's[1] April 1, 2014 Order (the "Per Diem Order") (JA[2] 430-437), which established the number of days the Behrmanns were delinquent in complying with the Bankruptcy Court's June 21, 2013 contempt order (the "Contempt Order") (JA250-290).  NHF also agrees that this Court has jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291 to review the District Court's[3] affirmance of the Per Diem Order and its imposition of sanctions against the Behrmanns for their frivolous appeal of that order.

## STATEMENT OF THE ISSUES

This consolidated appeal presents the following issues:

1.    Whether the Bankruptcy Court had jurisdiction to carry out the terms of the unstayed Contempt Order pending appeal.

---

[1] "Bankruptcy Court" refers to the United States Bankruptcy Court for the Eastern District of Virginia, the Honorable Brian F. Kenney presiding.

[2] "JA" refers to the Joint Appendix filed in this Court.

[3] "District Court" refers to the United States District Court for the Eastern District of Virginia, the Honorable Leonie M. Brinkema presiding.

1

2.     Whether the District Court acted within its discretion in sanctioning the Behrmanns under Federal Rule of Bankruptcy Procedure 8020 because their appeal of the Per Diem Order was frivolous.

3.     Whether the District Court acted within its discretion in including within its sanctions an award of the $2,747 in fees and expenses that NHF incurred on appeal in successfully opposing the Behrmanns' motion to strike one of NHF's filings.

Though the Behrmanns assert that this appeal raises the question of whether the Per Diem Order "must be reversed because the Contempt Order (which is before this Court in a separate appeal)[4] was entered in error" (Appellants' Br. at 1), they cite no basis in which the Per Diem Order modifies, expands, or otherwise affects their prior appellate arguments for reversal of the Contempt Order.  The Behrmanns simply incorporate their prior challenges to the Contempt Order in this appeal.  (Appellants' Br. at 21.)  Therefore, NHF also rests upon its prior briefing to this Court regarding the validity of the Contempt Order.[5]

---

[4] *Behrmann v. Nat'l Heritage Found., Inc.*, Nos. 14-1541(L), 14-1543, 14-1576 (4th Cir. filed June 3, 2014) (the "Contempt Appeal").

[5] *See* NHF's Appellee Br. in the Contempt Appeal (filed Dec. 15, 2014).

## STATEMENT OF THE CASE

**I.**    **After the Bankruptcy Court Finds the Behrmanns in Contempt for Filing Discharged and Exculpated Claims Against NHF and Its Officers Without Leave of Court, the Behrmanns  Delay Compliance With Its Mandate to Dismiss the Offending Claims**

This appeal follows from sanctions entered against the Behrmanns after they disregarded the deadlines set forth in the Contempt Order, which they have separately appealed to this Court in their pending Contempt Appeal.  The full factual and procedural history relating to the Contempt Order are accurately set forth in *Behrmann v. Nat'l Heritage Found., Inc.* (*In re Nat'l Heritage Found., Inc.*), 510 B.R. 526, 531-36 (E.D. Va. 2014) (JA452-466) and in NHF's appellee brief to this Court in the Contempt Appeal.  For the purposes of this appeal, an abridged version may provide insight to the context of the Bankruptcy Court's subsequent Per Diem Order and the District Court's imposition of sanctions against the Behrmanns.

On June 28, 2012, less than four months after representing to the Bankruptcy Court that they had "no plan or intent to go file an action against [NHF]'s principals" before the Bankruptcy Court ruled on the validity of the Exculpation

3

Provision[6] of NHF's Plan of Reorganization (the "Plan"), the Behrmanns filed suit against NHF and its officers and directors in the United States District Court for the Central District of California (the "California Action").  (Contempt Order 4-6 (JA253-255).)  The Behrmanns did not correct their prior representation to the Bankruptcy Court, nor did they seek the Bankruptcy Court's permission to bring discharged and exculpated claims against NHF and its officers and directors in the California Action.  (Contempt Order 8 (JA257).)  The Behrmanns simply remained silent about the California Action, telling neither the Bankruptcy Court nor NHF that they had filed it even after the Bankruptcy Court reaffirmed the Exculpation Provision in August 2012.  (*Id.*)

It was not until October 22, 2012—after the California Action had been pending for four months, and shortly after the Behrmanns filed an amended complaint in that case—that the Behrmanns first told the Bankruptcy Court and NHF of the California Action and sought after-the-fact leave to commence it.  (*Id.*) NHF demanded that they dismiss the offending claims; the Behrmanns refused; and the Bankruptcy Court issued an order to show cause why the Behrmanns

---

[6] Pursuant to the Exculpation Provision of the Plan, anyone receiving notice of NHF's bankruptcy is prohibited from bringing any claim against NHF's officers, directors, and others for, among other things, "any act taken or omission made in connection with, or arising out of, the Bankruptcy Case," the Plan, or the Plan's implementation.  (Contempt Order 4 (JA253) (quoting the Plan).)

should not be held in contempt for violating the Discharge and Exculpation Provisions of the Plan.  (Contempt Order 14, 27, 32-33 (JA263, 266, 281-282).)

Still refusing to dismiss the offending claims, the Behrmanns forced the matter to a two-day evidentiary hearing before the Bankruptcy Court.  (Contempt Order 33 (JA282).)  Following the hearing, the Bankruptcy Court issued the Contempt Order, a comprehensive 40-page decision detailing the evidence and the Behrmanns' violations of the Exculpation and Discharge Provisions of the Plan. The Contempt Order directed the Behrmanns to compensate NHF for roughly one-third of its out-of-pocket legal fees and expenses arising from the contempt, and to dismiss the discharged and exculpated claims from the California Action within ten days or face combined[7] daily fines of $1,000 per day until they complied. (Contempt Order at 37, 39-40 (JA286, 288-289).)

On the tenth day after the Contempt Order issued, the Behrmanns sought additional time to obtain the dismissal of the offending claims, telling the Bankruptcy Court that they simply "need[ed] to do a couple of things in order to comply" with the Contempt Order.  (Per Diem Order at 1-3 (JA430-432).)  The Bankruptcy Court accepted that representation and granted their request for an

---

[7] The Contempt Order imposed daily fines of $500 per day for failing to timely dismiss claims barred by the Discharge Provision, and $500 per day for failing to dismiss claims barred by the Exculpation Provision.  (Contempt Order 39-40 (JA288-89).)

additional 30 days for compliance, but "made clear that the daily fines would begin

on August 1, 2013, absent compliance with the terms of the Contempt Order."

(*Id.*)  Thus, with the extension, the Behrmanns were granted 40 days to comply

with the Contempt Order by dismissing the discharged and exculpated claims from

the California Action, and they knew they would face daily fines if they failed to

do so.

Rather than taking any action to dismiss those claims during their 40-day

window for compliance, as they promised the Bankruptcy Court they would do, the

Behrmanns appealed the Contempt Order and moved to stay its enforcement

pending appeal.  (Bankr. Dkt. 1211, 1215, 1216, 1218; *see also* Per Diem Order 1-

3, 5-6 (JA430-432, 434-435).)  The Bankruptcy Court denied their request for a

stay pending appeal, and therefore the Contempt Order remained in effect.  (Bankr.

Dkt. 1241; *see also* Per Diem Order 5 (JA434).)

On September 20, 2013, roughly 15 months after filing discharged and

exculpated claims in the California Action, the Behrmanns finally dismissed them.

(Per Diem Order 7 (JA436).)  Under the terms of the dismissal submitted by the

Behrmanns, however, the Behrmanns continue to allege the exculpated claims are

subject to reinstatement should the Contempt Order be overturned on appeal.

(Behrmanns' Notice of Dismissal of Claims Ex. A (JA300).)

## II.    **The Bankruptcy Court Enters the Per Diem Order After the Behrmanns Disregard the Deadlines of the Contempt Order**

Following the dismissal of the offending claims, NHF moved the

Bankruptcy Court to reduce to judgment the amount of the daily fines that had

accrued on account of the Behrmanns' failure to timely comply with the Contempt

Order.  (NHF's Motion for Entry of Judgment With Respect to Contempt Fines

(JA291-300).)  This was a simple task required to carry out the terms of the

Contempt Order:  to perform it, the Bankruptcy Court needed only to determine the

number of days that the Behrmanns were tardy in their compliance, multiply that

number by the $1,000 combined daily fine established in the Contempt Order, and

enter a judgment in favor of NHF for the resulting total.  (*See* Contempt Order 39

(JA288) ("Should the Respondents fail to [dismiss the discharged claims against

NHF within the specified time period], the Court hereby imposes a daily fine in the

amount of $500 per day . . . until the [discharged claims are] dismissed against

NHF with prejudice."); *id.* at 39-40 (JA288-289) (same terms with regard to

exculpated claims).)

As NHF noted in its briefing to the Bankruptcy Court, there was no reason to

postpone that task to await the Behrmanns' exhaustion of their appeals of the

Contempt Order:

> Now that the offending California claims have finally been
> dismissed, there is no reason for this Court to delay reducing the
> daily contempt fines to judgment while Respondents engage in the

appellate process [relating to the Contempt Order].  If the District
Court affirms the Contempt Order over Respondents' arguments
on appeal, then there will be no need to return to this Court to seek
the same relief months or years in the future.  If, on the other hand,
the Contempt Order is overturned . . . then the judgment can
simply be vacated.  If NHF has managed to collect on the
judgment, it will be required to return the amount collected to
Respondents, as is the case after any successful appeal of an order
calling for monetary relief.  Alternatively, NHF would be
amenable to Respondents depositing the judgment amount with the
Court (as they did with respect to the compensatory damages
portion of the Contempt Order), or posting a bond for that amount
(as this Court previously authorized) pending the final outcome of
those appeals [of the Contempt Order].  There are no special
circumstances or risks of harm that warrant treating this monetary
award any differently than any other run-of-the-mill monetary
award that remains enforceable pending appeal.

(NHF Reply Br. in Supp. of Mot. for Entry of Judgment at 8 (JA308) (internal

record citations omitted).)

The Behrmanns objected, asserting that so long as they continued to appeal

the Contempt Order, the Bankruptcy Court lacked jurisdiction to enforce it.  (Per

Diem Order 3 (JA432).)

The Bankruptcy Court disagreed.  In its April 1, 2014 Per Diem Order, the

Bankruptcy Court observed that the Behrmanns' "position essentially amounts to a

request that this Court enter a stay" of the Contempt Order pending appeal, which

the Bankruptcy Court had previously denied.  (Per Diem Order 5 (JA434).)  The

Bankruptcy Court noted that "an appeal divests a trial court of jurisdiction over

'those aspects of the case involved in the appeal'" (*Id.* at 3 (JA432) (quoting, *inter*

8

*alia*, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982))), and the tabulation of the daily fines was not an "aspect[] of the case involved in the appeal."  (Per Diem Order 4 (JA433) (concluding that "the amount of the daily fines imposed by the Contempt Order is not an issue pending before the District Court on appeal" of the Contempt Order, and that "[t]he liquidation of the amount of the daily fines will not interfere in any way with the District Court proceedings" on appeal).

Having determined that it retained jurisdiction to carry out the express terms of the Contempt Order, the Bankruptcy Court found the Behrmanns responsible for the 18-day delay between the extended August 1, 2013 deadline for compliance with the Contempt Order and the August 19, 2013 notices of dismissal they filed in the California Action.[8]  (Per Diem Order 5-8 (JA434-437).)  Multiplying those 18 days by the $1,000 per day sanction established by the Contempt Order, the Bankruptcy Court entered an $18,000 judgment in favor of NHF and against the Behrmanns.  (*Id.* at 8 (JA437).)  Because the Behrmanns had threatened the Bankruptcy Court with an appeal of any judgment entered against them (March 25,

---

[8] Because the Behrmanns did not even begin the process for obtaining dismissal until after the deadline for compliance had passed, NHF argued that the Bankruptcy Court should hold the Behrmanns responsible for the 51 days between the August 1, 2013 compliance deadline and September 20, 2013—the date the claims were actually dismissed.  (JA291-294.)  As noted above, the Bankruptcy Court ultimately imposed a lesser sanction.

2014 Bankruptcy Court Hearing Tr. 27:5-11 (JA416:5-11)), the Bankruptcy Court also invited the Behrmanns to post a supersedeas bond of $25,000 and to request certification of the appeal directly to the Fourth Circuit pursuant to 28 U.S.C. § 158(d)(2)(A)(iii), once the District Court ruled on their appeal of the Contempt Order.  (Per Diem Order 5 n.3, 8 (JA434 n.3, 437).)

The Behrmanns did not accept the Bankruptcy Court's offer to expedite the proceedings, and never requested that either the Bankruptcy Court or the District Court certify their appeal of the Per Diem Order for review by this Court and/or consolidation with their appeal of the Contempt Order.  They did, however, post the supersedeas bond and move the Bankruptcy Court for an order "staying execution" of the Per Diem Order pending appeal.  (Bankr. Dkt. 1305 at 3.) Because the posting of the bond automatically stayed execution of the judgment on the Per Diem Order by operation of law, FED. R. BANKR. P. 7062, the Bankruptcy Court denied their additional motion to stay execution on the judgment as moot. (Bankr. Dkt. 1319.)

### III. The District Court Affirms the Per Diem Order, Finding the Behrmanns' Appeal Frivolous

#### A. Initial Briefing of the Per Diem Order Appeal

On May 5, 2014—roughly one month after the Bankruptcy Court issued the Per Diem Order—the District Court issued a detailed 60-page opinion affirming the Contempt Order in its entirety against a variety of attacks by the Behrmanns.

*See generally Behrmann*, 510 B.R. 526 (JA450-510).  In doing so, the District

Court observed that "many" of the Behrmanns' challenges to the Contempt Order

were frivolous, and warned the Behrmanns that any further needless litigation

would result in sanctions:

> The Court finds that sanctions for many of the arguments made by
> appellants would indeed be appropriate. . . .
>
> Imposing further sanctions may, unfortunately, simply encourage
> rather than deter additional litigation in a matter that should have
> been resolved years ago.  Of particular concern is the
> extraordinarily aggressive and far-ranging nature of this litigation,
> as well as the Behrmanns' apparent insistence on pursuing claims
> regardless of the costs of that pursuit, to themselves or others.
>
> For all of these reasons, NHF's Motion for Sanctions will be
> denied without prejudice.  Should appellants pursue any []other
> frivolous appeals, sanctions will be imposed for that appeal and the
> instant motion for sanctions will be reconsidered.

*Behrmann*, 510 B.R. at 553-54 (JA508-509).

Undeterred, the Behrmanns appealed the Bankruptcy Court's Per Diem

Order to the District Court.  (JA13, 21.)  They also immediately appealed the

Contempt Order to this Court, but the Behrmanns declined the Bankruptcy Court's

suggestion to seek certification of the Per Diem Order to this Court for a

consolidated appeal with the Contempt Order.  Instead, they asked NHF to agree to

"stay" the appeal of the Per Diem Order pending the outcome of the appeal of the

Contempt Order in this Court.  (Dist. Ct. Dkt. 16-1 (Case No. 14-cv-875).)  The

Behrmanns did not offer, however, to dismiss the Per Diem Order appeal if this

Court affirmed the Contempt Order. Nor did they ask to certify their appeal of the Per Diem Order to this Court, as the Bankruptcy Court suggested. As such, because a delay would only further postpone final resolution of the issues, NHF declined.

Thereafter, the Behrmanns (now represented by Appellants John Bloss and Lelia Winget-Hernandez—also Appellants in this matter) filed their opening appellate brief in the District Court. In it, the Behrmanns claimed no errors whatsoever in the relief imposed by the Per Diem Order. The Behrmanns did not challenge the Bankruptcy Court's conclusion that they were 18 days late in complying with the Contempt Order, nor did they question the Bankruptcy Court's math in multiplying those 18 days by the $1,000 daily fine established in the Contempt Order. Their *only* argument on appeal was that the Bankruptcy Court should have waited until the District Court (and ultimately this Court) decided the Behrmanns' appeals of the Contempt Order before tabulating the daily fines they accumulated by delaying the dismissal of the offending claims from the California Action.

NHF moved the District Court for sanctions against the Behrmanns under Federal Rule of Bankruptcy Procedure 8020 (JA521-535), on two primary grounds. *First*, the Behrmanns' jurisdictional challenge—their only argument on appeal—was frivolous. As NHF noted, the Bankruptcy Court's jurisdiction to

12

enforce its own unstayed order was supported by logic and overwhelming legal authority—including the very authority that the Behrmanns cited in their briefing. (NHF Br. in Supp. of Mot. for Sanctions 5-7 (JA529-531).) The Behrmanns had simply failed to confront this authority, and could not demonstrate any way in which the Per Diem Order possibly could have had any effect upon the pending appeal of the Contempt Order. (*Id.*)

*Second*, NHF noted that the appeal constituted needless multiplication of the proceedings, because the Behrmanns made no challenge to the Bankruptcy Court's conclusion that they were 18 days late in complying with the Contempt Order. (*Id.* at 7-9 (JA531-533).) Thus, the outcome of their arguments over the Bankruptcy Court's jurisdiction to enter the Per Diem Order would have no practical effect. If the Contempt Order were reversed on appeal, then both parties agreed that the Per Diem Order would necessarily be vacated regardless of whether the Bankruptcy Court had jurisdiction to enter it. If the Contempt Order were affirmed, then the Behrmanns conceded that they would be required to pay the $18,000 fines imposed by the Per Diem Order, which they did not challenge on appeal. The only question would be whether they would pay those fines pursuant to the Per Diem Order (if the Bankruptcy Court had jurisdiction to enter it on April 1, 2014), or pursuant to a new per diem order entered after the conclusion of the Contempt Appeal (if the Bankruptcy Court lacked jurisdiction to enter it on April 1, 2014). Either way,

NHF observed, the Behrmanns had nothing to gain by pursuing their appeal of the Per Diem Order, other than burdening the courts and forcing NHF to continue incurring legal fees and costs in litigation.

### B.    The Behrmanns Multiply the Proceedings With a Frivolous Motion to Strike

At the same time they were attempting to defend their vexatious litigation tactics, the Behrmanns epitomized them in their motion practice before the District Court.  Though there were two different case numbers (because the Behrmanns filed two separate notices of appeal (JA13, 21)), both parties treated the matter as a single appeal:  the Behrmanns signed, filed, and served a single "Joint Opening Brief" with a caption that included both case numbers, and NHF followed suit. (Dist. Ct. Dkt. 10 & 14 (Case No. 14-cv-859), Dist. Ct. Dkt. 6 & 12 (Case No. 14-cv-875).)  When it electronically filed its brief and accompanying documents, however, NHF submitted them through the ECF system for one of the case numbers, but mistakenly failed to submit copies of the exact same documents for the other case number.  (Dist. Ct. Dkt. 19 (Case No. 14-cv-875), at 1-2.)  That error had no practical effect for the parties—the documents were timely served on all parties, they were captioned with both appeal numbers, and neither NHF nor the Behrmanns appeared to notice the electronic filing mistake.  (*Id.*)

The District Court noticed it, however, and on September 8, 2014 ordered "that both parties treat [the appeals] as separate . . . and immediately ensure that

whatever pleadings are needed to complete this civil action are filed immediately."
(Dist. Ct. Dkt. 11 (Case No. 14-cv-875), at 1.)  NHF corrected its error the same
day, by submitting copies of the same appeal documents it previously submitted
through the ECF system for case number 14-cv-859 (the notice of appeal filed by
the Behrmanns individually) into the system for case number 14-cv-875 (the notice
of appeal filed by the Behrmanns' counsel).  (Dist. Ct. Dkt. 12-15, 19 (Case No.
14-cv-875).)

Though the District Court had already addressed the issue by ordering NHF
to correct its clerical mistake, the Behrmanns subsequently moved to strike NHF's
filings in case number 14-cv-875.  (JA540-543.)  The District Court denied the
motion to strike, concluding that "it was clearly a mistake made" by NHF, that the
District Court had "caught" the mistake on its own, and that "[t]here was
absolutely no prejudice to the . . . appellants from allowing the . . . two cases or the
two appeals to be set up correctly . . . ."  (Sep. 26, 2014 Hearing Tr. 23:10-22
(JA566:10-22).)  The District Court noted that the motion was "completely
inappropriate" in light of its prior order addressing the issue and requiring
corrective action.  (*Id.* at 23:15-22 (JA566:15-22).)

### C.    The District Court Imposes Appellate Sanctions

In a September 26, 2014 hearing, the District Court affirmed the Per Diem
Order and concluded that the appeal of that order was frivolous, on two grounds.

15

*First*, it found the Behrmanns' jurisdictional arguments to be "completely frivolous" on the merits, noting that the Bankruptcy Court's entry of Per Diem Order had no effect on the Contempt Appeal. (Sep. 26, 2014 Hearing Tr. 17:16-18:18 (JA560:16-561:18).)

*Second*, the District Court concluded that the appeal constituted a "waste of time," because the result the Behrmanns sought would only postpone the determination of the daily fines until after the Contempt Appeal, which would likely begin another round of appeals. (Sep. 26, 2014 Hearing Tr. 14:10-22 (JA557:10-22).) The $18,000 judgment of the Per Diem Order—which the Behrmanns did not even challenge, and which their counsel conceded was less than the cost of their appeal—did not justify such a "waste of resources." (*Id.* at 16:10-16 (JA559:10-16).) Therefore, given that the District Court had previously "warned [the Behrmanns] that if you took up this Court's time or any court's time with frivolous legal action, there would be sanctions as a result" (*Id.* at 14:1-9 (JA557:1-9), the District Court granted NHF's motion for appellate sanctions against the Behrmanns.[9]

---

[9] Despite its warning that it would reconsider whether to impose monetary sanctions for the Behrmanns' frivolous arguments in the Contempt Appeal if they pursued further frivolous litigation, *Behrmann*, 510 B.R. at 554 (JA509), the District Court declined to "go[] back over past history" and denied NHF's motion to reconsider sanctions for the earlier Contempt Appeal. (Sep. 26, 2014 Hearing Tr. 24:22-25 (JA567:22-25).)

With regard to the nature of the sanction, the District Court permitted NHF to seek reimbursement of legal fees incurred in litigating the Per Diem Order appeal, including the response to the Behrmanns' motion to strike.  (Sep. 26, 2014 Hearing Tr. 24:1-21 (JA567:1-21).)  The District Court ultimately ordered the Behrmanns to reimburse NHF for $24,303 in fees and expenses arising from the Behrmanns' appeal of the Per Diem Order, of which $21,556 was incurred in connection with briefing the merits of the appeal and $2,747 was incurred in opposing the motion to strike.  (JA588-591.)

The District Court entered judgment on November 10, 2014.  (JA596-597.) The Behrmanns signed their notices of appeal to this Court the next day, and filed them one week later.  (JA598-606.)

## SUMMARY OF ARGUMENT

The law governing a lower court's jurisdiction pending appeal of an order is well-established:  a timely notice of appeal divests a lower court of jurisdiction only "over those aspects of the case involved in the appeal."  *Griggs*, 459 U.S. at 58.  *See also Co. Doe v. Public Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) ("*Doe*") (characterizing that holding from *Griggs* as the "general rule").

The Behrmanns make no effort to explain how the Bankruptcy Court's largely ministerial task of determining the number of days they were late in complying with the Contempt Order is an "aspect[] of the case involved in the

17

appeal" of the Contempt Order, nor can they.  The Bankruptcy Court's Per Diem

Order simply carried out the terms of the unstayed Contempt Order, without

modifying, expanding or altering the Contempt Order in any way.  The Per Diem

Order has not had (and could not possibly have) any effect on their appellate

challenge to the merits of the Contempt Order.

Moreover, even if the Per Diem Order's calculation somehow affected the

Contempt Appeal, as the Behrmanns erroneously assume, this Circuit's case law

establishes that lower courts may act on certain matters pending appeal even if

those matters concern "aspects of the case involved in the appeal." *Fobian v.*

*Storage Tech. Corp.*, 164 F.3d 887, 890 (4th Cir. 1999).  Among those

circumstances, lower courts may (1) "take subsequent action on matters that are

collateral to the appeal," *Doe*, 749 F.3d at 258, such as entering a post-judgment

order awarding attorney fees, *Langham-Hill Petroleum Inc. v. S. Fuels Co.*, 813

F.2d 1327, 1330-31 (4th Cir. 1987), and (2) "take action that aids the appellate

process," *Doe*, 749 F.3d at 258, such as memorializing an oral decision in writing

and resolving open issues even though the subsequent decisions "expanded the

scope" of the oral decision on appeal, *In re Grand Jury Proceedings Under Seal*,

947 F.2d 1188, 1190 (4th Cir. 1991).

Though this Court need not reach those alternative grounds because the Per

Diem Order did not concern an aspect of the case involved in the appeal of the

Contempt Order, each of those grounds also supports the Bankruptcy Court's exercise of jurisdiction here. First, the Per Diem Order, like a post-judgment order entering a fee award to the prevailing party, *see Langham-Hill*, 813 F.2d at 1330-31, is collateral to the underlying judgment on appeal. Both a fee award and an order tabulating the amount of accrued daily fines are consequences of the underlying judgment, but neither affect the merits of that judgment while it is on appeal. Importantly, the Behrmanns never address why the tabulation of the fines was not "collateral to" the Contempt Appeal, an omission that is fatal to their jurisdictional argument. Second, as the Bankruptcy Court noted, entry of the Per Diem Order aided the appellate process by preventing a second round of litigation and appeals that would not have begun until after the Contempt Appeal concluded.

Given the glaring and unexplained flaws in their illogical jurisdictional arguments, the District Court properly affirmed the Bankruptcy Court and acted well within its discretion in imposing sanctions pursuant to Federal Rule of Bankruptcy Procedure 8020.

Sanctions were appropriate for another, related reason: the Behrmanns are, as the District Court aptly observed, "wasting everybody's time" with this appeal. (Sep. 26, 2014 Hearing Tr. 14:10-19 (JA557:10-19).) They have no valid explanation for declining to seek certification of this appeal to this Court, which could have avoided briefing and argument before the District Court altogether.

19

Further, they do not challenge the calculation of the $18,000 in accrued daily fines for failing to timely comply with the Contempt Order; thus, if the Contempt Order is upheld on appeal, they concede that they are responsible for paying those fines. (Appellants' Br. at 22 n.8.)  If the Contempt Order is overturned, both the Behrmanns and NHF agreed on the record below that the Per Diem Order would necessarily be vacated, as well.  Because they concede that their ultimate liability for the daily fines rests entirely upon whether the Contempt Order is affirmed or reversed (*id.*), this appeal represents needless litigation.

The District Court warned the Behrmanns against such litigation even before they appealed the Per Diem Order, censuring "the Behrmanns' apparent insistence on pursuing claims regardless of the costs of that pursuit, to themselves or others." *Behrmann*, 510 B.R. at 554 (JA509).  The Behrmanns disregarded that warning, and the District Court did not abuse its discretion in holding the Appellants responsible for the out-of-pocket harm they caused to NHF by pursuing a frivolous appeal.

## **ARGUMENT**

### I.    **Standard of Review**

This Court reviews subject matter jurisdiction determinations of the Bankruptcy Court and District Court *de novo*.  *New Horizon of NY LLC v. Jacobs*,

20

231 F.3d 143, 150 (4th Cir. 2000); *Hager v. Gibson*, 108 F.3d 35, 38 (4th Cir. 1997).

This Court reviews appellate sanctions imposed under Federal Rule of Bankruptcy Procedure 8020 under a "unitary abuse of discretion" standard, *Property Movers, L.L.C. v. Goodwin (In re Property Movers, L.L.C.)*, 31 Fed. App'x 81, 83 (4th Cir. 2002) (per curiam)[10]; that is, it applies "an abuse-of-discretion standard in reviewing all aspects of a district court's" determination to impose sanctions. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990); *Property Movers*, 31 Fed. App'x at 83 (citing same and adopting its standard of review by analogy). This deferential standard is designed to "streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court," and to "discourage litigants from pursuing marginal appeals" of orders imposing sanctions. *Cooter & Gell*, 496 U.S. at 404.

## II.    <u>The Bankruptcy Court Had Jurisdiction to Enter the Per Diem Order</u>

The Bankruptcy Court retained jurisdiction to enter the Per Diem Order pending the appeal of the unstayed Contempt Order for at least three independent,

---

[10] NHF believes that this unpublished decision has precedential value and there is no published decision that serves as well with regard to review of a district court's imposition of sanctions pursuant to Rule 8020. Pursuant to Local Rule 32.1, it attaches the decision as Exhibit 1 to this brief.

alternative reasons:  (1) the straight forward calculation of the number of days the

Behrmanns were late in complying with the Contempt Order was not an "aspect[]

of the case involved in the appeal" of the Contempt Order, *Griggs*, 459 U.S. at 58;

(2) even if it were, the issue was at most "collateral" to the merits of the Contempt

Appeal; and (3) even if the Per Diem Order directly affected the issues in the

Contempt Appeal, it aided the appellate process by avoiding unnecessary delay and

permitting this Court to consider both appeals at the same time.  This brief

addresses each of these grounds in turn.

A.     **The Behrmanns' Appeal of the Unstayed Contempt Order Did
Not Divest the Bankruptcy Court of Jurisdiction to Implement
that Order**

1.     **The Tabulation of the Number of Days the Behrmanns
Were Late in Complying With the Contempt Order Is Not
an Aspect of the Case Involved in the Contempt Appeal**

The filing of a notice of appeal divests the lower court of jurisdiction only

"over those aspects of the case involved in the appeal."  *Griggs*, 459 U.S. at 58.

This is a "judge made rule originally devised in the context of civil appeals to

avoid confusion or waste of time resulting from having the same issues before two

courts at the same time."  *United States v. Montgomery*, 262 F.3d 233, 239-40 (4th

Cir. 2001) (internal quotation omitted).  *See also Crutchfield v. U.S. Army Corps of
Engineers*, 230 F. Supp. 2d 673, 679-80 (E.D. Va. 2002) (noting the "rather

obvious proposition" that "the purpose of the rule [of *Griggs*] is to prevent a trial court and an appellate court from considering the same issues simultaneously").

As they did in the District Court below, the Behrmanns cite this general rule, but fail to acknowledge its consequences for this case. The Behrmanns simply ask this Court to *assume*—without any explanation, and despite two lower court decisions to the contrary—that the Per Diem Order concerned an aspect of the case involved in their appeal of the Contempt Order, *Griggs*, 459 U.S. at 58, and that the Bankruptcy Court's entry of the Per Diem Order somehow resulted in "confusion or waste of time resulting from having the same issues before two courts at the same time," *Montgomery*, 262 F.3d at 239-40. Indeed, the Behrmanns have now argued to three courts that the Bankruptcy Court lacked jurisdiction to enter the Per Diem Order due to their appeal of the Contempt Order, without ever identifying any logical way in which the Bankruptcy Court's calculation of the daily fines could possibly impact the adjudication of the issues raised in their Contempt Appeal.

Nor can they. Nothing in the Per Diem Order changes, expands, modifies, or otherwise impacts the Contempt Order in any manner whatsoever; it simply adds up the number of days the Behrmanns were late in complying with the Contempt Order, a number that could not be known until the Behrmanns actually complied with the Contempt Order by dismissing those claims in September 2013.

23

That ministerial task of determining the days and multiplying them by the daily fine amount set forth in the Contempt Order certainly had no effect on the arguments in the Contempt Appeal. Indeed, the only mention of the Per Diem Order in the briefing of the Contempt Appeal appears in a footnote in the background section of the Behrmanns' opening brief, which simply notifies this Court that the Per Diem Order would "be the subject of a separate appeal to this Court" unless it were stayed. (Appellants' Opening Br. in Contempt Appeal, at 21 n.16 (filed Oct. 23, 2014).)

In sum, the Behrmanns have not and cannot possibly identify any way in which the Per Diem Order created any risk of "having the same issues before two courts at the same time," *Montgomery*, 262 F.3d at 239-40, or otherwise affected or interfered with appellate review of the Contempt Order in any way, *Griggs*, 459 U.S. at 58. They simply ignore this threshold inquiry for their jurisdictional challenge, and have thus waived any possibility of prevailing upon that challenge on appeal. *See* FED. R. APP. P. 28(a)(8)(A); *United States v. Leeson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006); *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995).

>        **2.    Courts Universally Recognize that Enforcement of an Unstayed Order Pending Appeal Does Not Implicate the "Aspects of the Case Involved in the Appeal"**

The Behrmanns could not possibly identify any way in which the Bankruptcy Court interfered with their appeal of the Contempt Order, because the

Per Diem Order does nothing more than follow the direction of the Contempt

Order to the letter.

Consistent with *Griggs*—and with federal law contemplating the need to

obtain a stay to avoid enforcement of an order pending appeal—a lower court's

enforcement of an order pending appeal does not implicate "aspects of the case

involved in the appeal" unless the lower court alters, expands, or modifies the

order. *See Greater Potater Harborplace, Inc. v. Jenkins*, No. 90-1462, 1991 U.S.

App. LEXIS 11015, at *10 (4th Cir. May 31, 1991) ("An effective notice of appeal

divests a district court of jurisdiction to tamper with the judgment, but it does not

divest the court of jurisdiction to enforce a judgment.").[11]  *See also, e.g., Blue*

*Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 638 (7th Cir. 2006)

("Because a stay had been neither sought nor issued *sua sponte*, the [lower] court

was entitled to enforce its disposition even though American Express was

simultaneously attempting to have it vacated on appeal."); *Acevedo-Garcia v.*

*Vera-Monroig*, 368 F.3d 49, 58 (1st Cir. 2004) ("The federal rules contemplate

that, absent a stay, a victorious [party] may execute on the judgment even while an

---

[11] NHF believes that this unpublished decision has precedential value and there is no published decision that serves as well for this particular point.  *See United States v. Watlington*, No. 05-CR-4-1-F3, 2010 U.S. Dist. LEXIS 69340, at *3 (E.D.N.C. July 12, 2010) (also quoting *Greater Potater* for this point). Pursuant to Local Rule 32.1, it attaches the *Greater Potater* decision as Exhibit 2 to this brief.

appeal of that judgment is pending . . . [T]he fact that the judgment is on appeal does not deprive the district court of its normal contempt powers" to enforce compliance with "a court order related to execution on a judgment"); *In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d 372, 375-76 (8th Cir. 1996) ("[N]otwithstanding an appeal, the [lower] court retains jurisdiction to the extent necessary to enforce its judgment which has not been stayed," including the authority "to enforce its contempt order by requiring appellants to pay their contempt fines"); *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 798 (B.A.P. 9th Cir. 1995) ("It is equally established, however, that while an appeal of an order is pending, the trial court retains jurisdiction to implement or enforce the order" because "in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review"); *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (holding that a lower court had jurisdiction to hold party in contempt of an unstayed order pending appeal, because "[a]lthough a [lower] court may not expand upon an order after the notice of appeal has been filed, it may take action to enforce its order in the absence of a stay pending appeal"); *Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir. 1982) (holding that the lower court retained jurisdiction to enforce a judgment and permit discovery in aid of execution pending appeal, and noting that arguments to the contrary "border on the

frivolous in view of settled law"); *Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, 693 F.2d 1140, 1146 (5th Cir. 1982) (pending appeal of an unstayed injunction, the trial court "maintained jurisdiction to supervise its injunction—to execute its unsupeseded judgment—and properly entertained the motion for contempt"); *Deering Milliken, Inc. v. Fed. Trade Comm'n*, 647 F.2d 1124, 1129 (D.C. Cir. 1978) (noting that a "trial court's powers to enforce its unstayed judgment" are "retained . . . throughout the pendency of the appeal."); JAMES WM. MOORE, 20 MOORE'S FEDERAL PRACTICE § 303.32[2][b][vi] (3d ed. 2014) ("Until the [lower] court's judgment is superseded or stayed, the judgment is fully in effect and the [lower] court retains the authority to enforce the judgment.  However, the [lower] court may not enlarge or alter the scope of the judgment after a notice of appeal has been filed."); WRIGHT, MILLER, COOPER & STRUVE, 16A FEDERAL PRACTICE & PROCEDURE § 3949.1 (4th ed. 2008) ("Unless the judgment is stayed, the [lower] court may act to enforce it despite the pendency of an appeal.").

There is no principled basis for distinguishing the Bankruptcy Court's tabulation of the daily fines established in the Contempt Order from any of the various post-appeal actions authorized in the case law cited above, all of which concerned lower-court acts to implement unstayed orders while those orders were on appeal.

Moreover, the authorities' universal agreement that lower courts retain jurisdiction to *carry out* unstayed orders pending appeal (so long as they do not *modify* the orders on appeal) makes sense. If the mere act of appealing an order deprived the lower court of jurisdiction to enforce it, it would effectively operate as an automatic stay of the order pending its appeal. There would be no reason for a party to seek a stay, and no reason for a legal framework to govern stays pending appeal. Yet such a framework exists. Specific to this case, 28 U.S.C. § 158(d)(2)(D) mandates that "[a]n appeal [of a final order of a bankruptcy court] *does not stay any proceeding of the bankruptcy court* . . . unless the respective bankruptcy court, district court, or . . . . the court of appeals . . . issues a stay of such proceeding pending the appeal." *Id.* (emphasis added).

> **B.    Even if the Behrmanns Could Satisfy the Threshold Inquiry of *Griggs*, the Bankruptcy Court Retained Jurisdiction to Enter the Per Diem Order on Alternative Grounds**

Even if the Behrmanns were able to identify any way in which the Bankruptcy Court's tabulation of their late charges affected some aspect of their appeal of the Contempt Order—and they cannot—their jurisdictional arguments would still fail, because the Bankruptcy Court also retained jurisdiction to enter the Contempt Order under each of two alternative grounds permitting lower courts to exercise jurisdiction even over "aspects of the case involved in the appeal": (1) at most, the Per Diem Order consisted of an "action on matters that are collateral to

28

the appeal," and (2) the Per Diem Order was an "action that aids the appellate process." *Doe*, 749 F.3d at 258 (cited in Appellants' Br. at 24).

> **1.    The Tabulation of the Number of Days the Behrmanns Were Late in Complying With the Contempt Order Is Collateral to the Issues in Their Appeal of the Contempt Order**

*First*, the single issue involved in the Per Diem Order—the determination of the number of days the Behrmanns were late in complying with the Contempt Order—was at most collateral to the issues on appeal. This principle, which appears to overlap substantially with the "general rule" of *Griggs* that lower courts retain jurisdiction over matters that do not concern aspects of the appeal, is best illustrated by the case this Court recently cited as an example of its application: *Langham-Hill Petroleum Inc. v. Southern Fuels Co.*, 813 F.2d 1327 (4th Cir. 1987) (cited in *Doe*, 749 F.3d at 258).

In *Langham-Hill*, the prevailing plaintiff brought a post-judgment (and post-appeal) motion for an award of attorney fees and costs. *Langham-Hill*, 813 F.2d at 1329. The trial court granted the motion, determined the amount of fees, and ordered the defendant and its attorney to pay them. *Id.* at 1330. On appeal, the defendant contended that the fee award was void "because the [trial] court does not retain jurisdiction of a case after the notice of appeal [of the underlying judgment] is filed." *Id.* This Court disagreed, noting "that the request for attorney's fees

29

raised issues collateral to the main cause of action" on appeal.  *Id.* at 1331 (citing

*White v. New Hampshire Dep't of Empl. Sec.*, 455 U.S. 455 (1982)).

There is no relevant distinction between the post-judgment fee award in

*Langham-Hill* and the tabulation of daily fines here.  Both derived from underlying

orders on appeal, and both would necessarily be vacated if those underlying orders

were reversed.[12]  But neither impacted the "main cause of action" on appeal; in

each case, the post-appeal order was a consequence of the judgment on appeal that

did not change the arguments for affirmance or reversal of that judgment.

Though the Behrmanns include a block quotation from *Doe* that cites

*Langham-Hill* as an example of the "matters collateral to the appeal" exception

(Appellants' Br. at 24), they cannot distinguish *Langham-Hill* and they ignore

entirely the independent basis for jurisdiction that exists where "matters [are]

collateral to the appeal."  This disregard is fatal to their jurisdictional challenge.

Instead, the Behrmanns rest their jurisdictional argument solely upon the

erroneous assumption that a lower court only retains jurisdiction to decide matters

that demonstrably improve judicial efficiency.  (*See* Appellants' Br. at 25.)  Here,

too, they are mistaken.  Rather, courts within this Circuit have rejected that

---

[12] The post-judgment fees in *Langham-Hill* were awarded as sanctions under Rule 11 of the Federal Rules of Civil Procedure for the defendant's frivolous defenses, *id.* at 1328 —an award that necessarily would have been vacated if the defendant prevailed in arguing those defenses on appeal.

argument as ignoring the "rather obvious proposition" that appeals only divest lower courts of jurisdiction over "those aspects of the case involved in the appeal," where there is a risk of "duplication of effort and conflict between the appellate court and the trial court." *Crutchfield*, 230 F. Supp. 2d at 679-80. In other words, while the lower court lacks jurisdiction to take actions that would actively *hinder* judicial efficiency by creating duplicative effort and needless conflict with the appellate court hearing the appeal, it is not required to find that its ruling would affirmatively *promote* such efficiency before ruling on matters collateral to the appeal. What *Crutchfield* found to be a "rather obvious proposition," the Behrmanns just disregard—though it dooms their jurisdictional challenges, as well.

> ## 2. The Bankruptcy Court's Entry of the Per Diem Order Would Have Promoted Judicial Efficiency; the Behrmanns Simply Opted For Inefficiency

*Second*, the Bankruptcy Court had jurisdiction for another independent reason: the Per Diem Order *did* "aid[] the appellate process." *Doe*, 749 F.3d at 258. Had the Bankruptcy Court waited to enter the Per Diem Order until after this Court had decided the Contempt Appeal, it could have given rise to a second round of appeals that would have further prolonged the conclusion of this matter. As the Bankruptcy Court accurately predicted, ruling on the Per Diem Order while the Contempt Appeal was pending enabled this Court to hear the appeals of the Contempt Order and the Per Diem Order at the same time, "thereby avoiding

31

piecemeal appeals at that level of appeal." (Per Diem Order 5 (JA434).) It also provided the Behrmanns with the opportunity to seek certification of their appeal of the Per Diem Order to this Court immediately following the District Court's affirmance of the Contempt Order. *See* 28 U.S.C. § 158(d)(2)(A)(iii) (cited in Per Diem Order 5 n.3 (JA434 n.3)). The Behrmanns chose not to do so.

While the Behrmanns claim that this case "has proven" that "inefficiency and inconsistent outcomes are the likely result of the trial court and reviewing court concurrently attempting to assert jurisdiction over a case" (Appellants' Br. at 25), they cite no inconsistent outcomes, and no instances in which the Bankruptcy Court's exercise of jurisdiction relating to the Per Diem Order clashed with appellate jurisdiction relating to the Contempt Order. The only "inefficiency" they identify is the inefficiency they caused by bringing this appeal of the Per Diem Order. But there is no question that the Bankruptcy Court's decision, and the ensuing immediate appeal of the Per Diem Order—which, the Bankruptcy Court reasoned, could allow this Court to hear both appeals at once—aids the appellate process by avoiding a piecemeal appeal of the Per Diem Order years in the future. *See, e.g.*, *Langham-Hill*, 813 F.2d at 1331 (noting that prompt resolution of post-judgment fee awards "normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits," and thus avoid "piecemeal" appeals taken after that judgment is affirmed).

Furthermore, by refusing the Bankruptcy Court's suggestion to seek certification of this appeal to this Court pursuant to 28 U.S.C. § 158(d)(2)(A)(iii) once the District Court decided the Contempt Appeal, the Behrmanns declined an option to further aid appellate efficiency. Had they taken the Bankruptcy Court's advice, briefing and argument of this appeal in the District Court could have been avoided, and both the Contempt Appeal and this appeal could have been consolidated and briefed simultaneously in this Court, saving all parties significant time and expense. Thus, the fault for any inefficiencies in this appeal lies solely with the Behrmanns —not with the Bankruptcy Court in simply carrying out the express terms of the unstayed Contempt Order.

### C. Appellants' Reliance Upon a Footnote in a 32-Year-Old Ninth Circuit Decision is Misplaced

Against the weight of all of this authority, the Behrmanns offer only a two-sentence footnote in a 1983 Ninth Circuit decision that makes a contrary finding, without further explanation. *See Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 n.1 (9th Cir. 1983). According to the Behrmanns, the *Shuffler* footnote "remains binding precedent in the Ninth Circuit" and proves "there is a Circuit split on the jurisdictional issue." (Appellants' Br. at 1, 31.)

Neither characterization is accurate. As noted above, there is no disagreement among the Circuits that lower courts may implement unstayed orders pending appeal. The basis for the Behrmanns' so-called "Circuit split" consists of

33

a single outlier footnote in a Ninth Circuit case decided over thirty years ago that does not appear to be good law within the Ninth Circuit, let alone any other jurisdiction.[13]  Indeed, the Ninth Circuit and courts within it have subsequently and repeatedly held that a lower court retains jurisdiction over "all other matters that it must undertake the implement or enforce the judgment or order [on appeal], though it may not alter or expand the judgment."  *Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 967 (9th Cir. 2007).  *See also, e.g.*, *Rains v. Flinn (In re Rains)*, 428 F.3d 893, 904 (9th Cir. 2005) (bankruptcy court retained jurisdiction to enforce a settlement agreement even though the order approving that agreement was on appeal, because the bankruptcy court "retains jurisdiction to implement or enforce the judgment or order [on appeal] but may not alter or expand the judgment") (internal quotation omitted); *Hagel*, 184 B.R. at 798; *In re Ahmed*, 420 B.R. 518, 523 (Bankr. C.D. Cal. 2009) ("The appeal only deprives the bankruptcy court of the power to alter, expand or vacate the order at issue.").

Thus, as the Eighth Circuit noted in rejecting arguments that a lower court "lacked jurisdiction to order the payment of fines because the contempt order on

---

[13] It is also *dicta*, because the *Shuffler* court overturned the portion of the underlying order that the lower court was attempting to enforce; thus, any acts to enforce that order would have been vacated in any event.  *See Shuffler*, 720 F.2d at 1147-49.

which the fines were based was then the subject of an appeal," any reliance upon

*Shuffler* is "misplaced":

> The appellants cite only two cases in support of their argument that the district court lacked jurisdiction to enter the December 5 order. *See Donovan v. Mazzola*, 761 F.2d 1411, 1414 (9th Cir. 1985); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983). Initially, we note that case law from the Ninth Circuit is not binding. Secondly, we point out that other Ninth Circuit case law supports our decision. . . . Consequently, appellants' reliance on *Donovan* and *Shuffler* is misplaced.

*In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d at 373, 375 n.4. Like the

Bankruptcy Court and District Court here, the Eighth Circuit affirmed the trial

court's jurisdiction to tabulate the number of days the appellants were late in

complying with an unstayed order on appeal (in that case, an order compelling

compliance with subpoenas duces tecum) and to multiply that number by the

$1,000 daily fine set forth in that order for late compliance. *Id.* at 373-74, 376.

The Behrmanns attempt to reconcile *Shuffler* with subsequent Ninth Circuit

precedent by speciously asserting that "an order imposing fines for a violation of a

prior order is not tantamount to 'enforcement' of the prior order." (Appellants'

Opening Br. at 27-28 n.9.) The argument is inconsistent with the authorities cited

in Section A.2, *supra*, and the Eighth Circuit explained why: "When it ordered the

payment of fines, the [lower] court did not expand upon its earlier contempt

order—it simply entered the payment order in support of its earlier judgment. The

[lower] court retained this power to enforce its earlier order, notwithstanding the

35

appeal." *In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d at 376. *See also id.* at 375 ("Even after being held in contempt, appellants were given an opportunity to comply with the subpoenas and purge the contempt. . . . Because the [lower] court was supervising the continuing debate over appellants' compliance with the subpoenas, it should not be rendered powerless by the filing of an appeal.").

Finally, even if the *Shuffler* footnote did not conflict with subsequent Ninth Circuit precedent, neither the Behrmanns nor the *Shuffler* decision itself offer any reason why this Court ought to follow it. If followed, it would render lower courts "powerless" to enforce civil contempt orders pending appeal, *id.*, render stays of such orders pending appeal superfluous (because the lower court lacks the power to enforce them pending appeal), and effectively overturn 28 U.S.C. § 158(d)(2)(D), which mandates that an appeal "does not stay any proceeding of the bankruptcy court" unless the Bankruptcy Court enters such a stay. The 32-year-old *Shuffler* dicta appears to have been a simple mistake by one Ninth Circuit panel regarding a tangential issue in that appeal, *see supra* note 13—a mistake that has not been repeated in other Circuits, and which the Ninth Circuit has since corrected. The Behrmanns offer no reason why this Court should repeat that error.

## III.  The District Court Did Not Abuse Its Discretion in Finding that Appellate Sanctions Were Warranted

In affirming the Contempt Order in May 2014, the District Court concluded that "many" of the Behrmanns' arguments for reversal were frivolous. *Behrmann*,

510 B.R. at 553 (JA508).  It nevertheless exercised leniency, declining to impose

sanctions and instead issuing a clear warning that further frivolous appeals would

not be tolerated:

> Of particular concern is the extraordinarily aggressive and far-
> ranging nature of this litigation, as well as the Behrmanns'
> apparent insistence on pursuing claims regardless of the costs of
> that pursuit, to themselves or others.
>
> For all these reasons, NHF's Motion for Sanctions will be denied
> without prejudice.  Should appellants pursue any other frivolous
> appeals, sanctions will be imposed for that appeal and the instant
> motion for sanctions will be reconsidered.[14]

*Id.* at 553-54 (JA509).

As proven by their arguments on appeal of the Per Diem Order, the

Behrmanns failed to take that warning seriously.  A mere three months after the

District Court gave them a break by declining to impose sanctions for their

frivolous arguments for reversal of the Contempt Order, the Behrmanns returned to

the District Court with equally frivolous arguments for reversal of the Per Diem

Order.  To make matters worse, their appeal of the Per Diem Order needlessly

multiplied the litigation, as:  (1) it had no discernible purpose, because all parties

(including the Behrmanns) agreed that their ultimate liability for the $18,000 in

daily fines "rises or falls with the Contempt Order" regardless of when the

---

[14] The District Court subsequently declined to reconsider its denial of NHF's
motion for sanctions for frivolous arguments on the appeal of the Contempt Order.
(JA570-571.)

Bankruptcy Court tabulated those fines (Appellants' Br. at 22 n.8); and (2) the Behrmanns declined the Per Diem Order's invitation to seek certification of any appeal from it to this Court for consolidation with the Contempt Appeal, which would have eliminated the need for appellate briefing and argument in the District Court.

The District Court imposed sanctions against the Behrmanns under Federal Rule of Bankruptcy 8020 on each of those alternative grounds—the frivolousness of the appeal, and the Behrmanns' needless multiplication of the litigation. (Sep. 26, 2014 Hearing Tr. 14:1-22, 16:4-18:18 (JA557:1-22, 559:4-561:18).)

For the reasons set forth below, the Behrmanns do not and cannot show a basis for reversal under any standard of review, let alone the highly deferential "unitary abuse of discretion" standard applicable to sanctions imposed under Rule 8020. *Property Movers*, 31 Fed. App'x at 83.

### A.     The District Court Did Not Abuse Its Discretion in Concluding that the Behrmanns' Jurisdictional Arguments Were Frivolous

Rule 8020 authorizes district courts to impose sanctions if they "determine[] that an appeal from an order, judgment or decree of a bankruptcy judge is frivolous . . . ." FED. R. BANKR. P. 8020. The language of Rule 8020 is essentially identical to that of Federal Rule of Appellate Procedure 38, and cases decided under either rule are persuasive in assessing frivolousness. *Property Movers*, 31 Fed. App'x at 83 (affirming district court's imposition of sanctions under Rule 8020). "Sanctions

for the filing of a frivolous appeal are desirable in an appropriate case because they compensate the prevailing party for the expense of having to defend a wholly meritless appeal, and by deterring frivolity, they preserve the appellate calendar for cases truly worthy of consideration." *Id.* at 84.

"An appeal is frivolous where the result is obvious or when the appellant's argument is wholly without merit." *Id.* Among other grounds, a finding of frivolousness is warranted when an appellant's arguments are "predominantly irrelevant or illogical," *id.* at 88 (citing *Romala Corp. v. United States*, 927 F.2d 1219, 1225 (Fed. Cir. 1991); *see also id.* at 88-89 (characterizing appellant's argument as "exactly the sort of unfounded and illogical argument capable of rendering an appeal frivolous as argued"), or when they fail to "respon[d] to a lower court's accurate exposition of the law," *Property Movers*, 31 Fed. App'x at 84; *see also Hilgeford v. Peoples Bank*, 776 F.2d 176, 179 (7th Cir. 1985) (appeal frivolous where appellant failed to "refut[e] the [trial] court's analysis"); *Atlantic Cement Co. v. S. Shore Bank*, 730 F.2d 831, 833-34 (1st Cir. 1984) (appeal frivolous where appellant urged reversal based on its "*ipse dixit* assertion" that the lower court's application of the law was improper).

The District Court did not abuse its discretion in finding that the Behrmanns' arguments fell well within that definition. The Behrmanns have never disputed that an appeal only divests the trial court of jurisdiction over "those aspects of the

case involved in the appeal," *Griggs*, 459 U.S. at 58, and they have never disputed that the purpose of that "judge-made rule" is to prevent "having the same issues before two courts at the same time," *Montgomery*, 262 F.3d at 239-40 (internal quotation omitted). *See also Crutchfield*, 230 F. Supp. 2d at 679. The Bankruptcy Court concluded that the Per Diem Order was not an aspect of the Contempt Appeal, because the amount of the daily fines (determined by the number of days the Behrmanns delayed in complying with the Contempt Order) was "not an issue pending before the District Court on appeal." (Per Diem Order 4 (JA433).) Moreover, the Bankruptcy Court noted that the Behrmanns' jurisdictional argument "essentially amounts to a request that this Court enter a stay" of the Contempt Order pending appeal—a request it had already rejected more than seven months earlier. (*Id.* at 5 (JA434).)

Thus, it should have been obvious to the Behrmanns that they would need to refute the Bankruptcy Court's analysis on appeal, demonstrating how the Per Diem Order created the risk of two courts reviewing the same issues at the same time. The fact that the Behrmanns could not make such an argument should have alerted them that it was baseless to pursue an appeal on jurisdictional grounds. Yet they plowed ahead anyway, reflexively citing the language of *Griggs* but making no effort to refute the Bankruptcy Court's reasons why it possessed jurisdiction under *Griggs* and other authority. As the District Court noted—and the Behrmanns do

40

not dispute—the Per Diem Order "didn't change any of the merits of the case.  It

doesn't change anything for the Court of Appeals other than it gives them the final

picture[.]"  (Sep. 26, 2014 Hearing Tr. 18:12-14 (JA561:12-14).)

      The Behrmanns misleadingly claim that the District Court abused its

discretion for two primary reasons, both of which show desperation.  *First*, they

claim that the District Court "acknowledged . . . the Appellants' appeal of the Per

Diem Order based on their pending challenge to the Contempt Order . . . was

completely justified."  (Appellants' Br. at 31.)  In fact, the District Court made the

exact opposite finding.  In its words, "[t]his argument that the bankruptcy court did

not have jurisdiction . . . is, in my view, *completely frivolous*, and I had warned

you previously that if you took up this Court's time or any court's time with

frivolous legal action, there would be sanctions as a result."  (Sep. 26, 2014

Hearing Tr. 14:1-7 (JA557:1-7) (emphasis added); *see also id.* at 18:3-18 (JA561:3-

18).)  The District Court noted, in response to the Behrmanns' argument, that it had

"no problem with [their] preserving [their] right to appeal" (*id.* at 16:4-5 (JA559:4-

5)), but the right to appeal a final order does not include a right to pursue frivolous

positions on appeal.  *See Coghlan v. Starkey*, 852 F.2d 806, 809 (5th Cir. 1988)

("However, it is not Coghlan's right to appeal the judgment against her that is at

issue; rather, the point is that her entirely 'frivolous' appeal is an unjustified

consumption of appellate resources, which, 'in addition, has put the appellee to

41

[the] heavy expense required to analyze the record, brief the issues and argue the case.'") (quoting *Bank of Canton, Ltd. v. Republic Nat'l Bank*, 636 F.2d 30, 31 (2d Cir. 1980)).

*Second*, presumably referring to the *Shuffler* dicta, the Behrmanns contend that their arguments could not be frivolous because there is a "Circuit split" on the issue of whether unstayed orders remain enforceable pending appeal. (Appellants' Br. at 31.) As noted above, there is no Circuit split on that question. *No* Circuit—including the one that issued the *Shuffler* decision—holds that trial courts lack jurisdiction to implement unstayed orders pending appeal, so long as those trial courts do not alter or modify the orders on appeal. *See Cronin v. Town of Amesbury*, 81 F.3d 257, 261 (1st Cir. 1996) (finding appellate sanctions warranted where "[e]ven a cursory reading of the relevant case law and treatises would have revealed that the" claim was baseless). The need for the Behrmanns to distort *Shuffler* as indicative of a purported Circuit split on the question only underscores the frivolousness of their positions on appeal. *See Applewood Landscape & Nursery Co. v. Hollingsworth*, 884 F.2d 1502, 1510 (1st Cir. 1989) ("But the very fact that this appellant has presented meritless claims in the guise of close questions means that the appellees and the court have had to spend considerably *more* time pouring through the record to divine the proper outcome."); *Porter v.*

42

*Farmers Supply Serv., Inc.*, 790 F.2d 882, 887 (Fed. Cir. 1986) ("The necessity of distortion should have alerted [appellant] to the frivolity of the appeal.").

Moreover, even if the *Shuffler* dicta did represent the current law in the Ninth Circuit, the Behrmanns offer no excuse for failing to apply the jurisdictional analysis required in *this* Circuit—including whether the Per Diem Order concerned an aspect of the appeal of the Contempt Order, *Griggs*, 459 U.S. at 58, whether it concerned "matters that [we]re collateral to the appeal" of the Contempt Order, *Doe*, 749 F.3d at 258; *Langham Hill*, 813 F.2d at 1331, and whether the Per Diem Order "enforced" the Contempt Order, as opposed to "expand[ing]" or "otherwise alter[ing]" it, *Greater Potater Harborplace, Inc.*, 1991 U.S. App LEXIS 11015, at *10. Nor did they offer any reason why the *Shuffler* footnote *should* be adopted in this Circuit, why this Circuit and others have been wrong in applying a contrary rule, why *Shuffler* should have been persuasive to the Bankruptcy Court, or why the Bankruptcy Court was unreasonable in concluding that the Behrmanns' argument based on the *Shuffler* footnote would effectively create an automatic stay pending appeal. *Cf. Mays v. Chicago Sun-Times*, 865 F.2d 134, 139 (7th Cir. 1989) ("[A]n appeal is frivolous when the appellant merely restates arguments that the [lower] court properly rejected."); *Coghlan*, 852 F2d at 813 ("Rule 38 concerns are amply raised in this case by conclusory assertions of an alleged right in an appellate brief that cites only two cases, and fails to explain even those two.").

43

The Behrmanns offered no logical justification for the District Court to reject the precedent of this Circuit and the overwhelming weight of authority on the issue, and to reverse the Bankruptcy Court on the basis of two conclusory sentences from a decades-old Ninth Circuit decision.

In light of all of these fundamental deficiencies in their appellate challenges to the jurisdiction of the Bankruptcy Court—all of which should have been obvious from both the case law and common sense—the District Court acted well within its discretion in concluding that the Behrmanns' jurisdictional challenges were "wholly without merit," *Property Movers*, 31 Fed. App'x at 84, and therefore frivolous.

### B. The District Court Did Not Abuse Its Discretion in Concluding that the Appeal of the Per Diem Order Was a Needless Multiplication of the Litigation and a Waste of Resources

Since flagrantly violating the Contempt Order (and their assurances to the Bankruptcy Court) by filing the California Action without leave, the Behrmanns have been given a host of opportunities to avoid further litigation. Each time, they have "consciously chosen to plow on with their litigation." (Contempt Order 33 (JA282).) From "astonish[ingly]" refusing to dismiss the offending claims and forcing a two-day contempt hearing (*id.*), to obtaining an extension for compliance on misleading grounds (Per Diem Order 1-2, 5 (JA434)), to raising a host of "frivolous" challenges on appeal of the Contempt Order, *Behrmann*, 510 B.R. at

44

553 (JA508), to challenging the jurisdiction of the Bankruptcy Court to implement the unstayed Contempt Order, it became apparent to both the Bankruptcy Court and the District Court that the Behrmanns "simply don't care" about court orders or the costs of their litigation pursuits.  (Contempt Order 33 (JA282); *Behrmann*, 510 B.R. at 554 (JA509) (noting the Behrmanns "apparent insistence on pursuing claims regardless of the costs of that pursuit, to themselves or others").)

The District Court concluded that their appeal of the Per Diem Order continued their pattern of disregard for the time and resources of both NHF and the judiciary, which it warned them to cease months earlier.  *Behrmann*, 510 B.R. at 554 (JA509).  For the reasons set forth herein, the District Court did not abuse its discretion in finding that the Behrmanns' needless multiplication of proceedings presented an additional ground for sanctions.

      **1.**    **The Appeal of the Per Diem Order Could Not Have Had Any Practical Effect, and Thus Amounts to "Recreational Litigation"**

Even if the Behrmanns had presented non-frivolous grounds for concluding that the Bankruptcy Court lacked jurisdiction to enter the Per Diem Order, the District Court did not abuse its discretion in concluding that their appeal was an academic exercise that was "wasting everybody's time" (Sep. 26, 2014 Hearing Tr. 14:10-19 (JA557:10-19)), for at least two reasons.

*First*, as the District Court noted, the Behrmanns created "unnecessary litigation" and needlessly wasted the resources of the parties and the District Court by failing to "take up [the Bankruptcy Court's] suggestion" and seek certification of this appeal directly to this Court. (*Id.* at 14:18-22, 16:4-9 (JA557:18-22, 559:4-9).) If the Behrmanns truly believed that the Per Diem Order somehow affected some aspect of the Contempt Appeal—as required for challenging the Bankruptcy Court's jurisdiction—there is no reason they would not pursue certification of the appeal directly to this Court, to be consolidated and briefed concurrently with the Contempt Appeal. Had they done so, the entire expenditure of resources necessitated by the Behrmanns' appeal to the District Court could have been avoided by all parties.

*Second*, as noted above, the Behrmanns concede that they were 18 days late in complying with the Contempt Order, and thus the only way they may avoid their obligation to pay those fines is if the Contempt Order is vacated on appeal. (*See* Appellants' Br. at 22 n.8.) Prior to the issuance of the Per Diem Order, NHF acknowledged that an order memorializing the daily fines would be vacated if the Contempt Order were vacated on appeal, and offered to allow the Behrmanns to deposit the daily fine amount with the Bankruptcy Court (where their payment of other Contempt Order damages was already residing) pending the outcome of the Contempt Appeal. (NHF Reply Br. in Supp. of Mot. for Entry of Judgment at 8

(JA308).)  Thus, the Behrmanns had nothing to gain by appealing the Bankruptcy

Court's jurisdiction to enter the Per Diem Order, under any scenario:

- If their jurisdictional arguments prevailed and the Contempt Order was affirmed, the Bankruptcy Court would simply re-enter the Per Diem Order following the affirmance.

- If their jurisdictional arguments failed and the Contempt Order was affirmed, NHF would request release of the $18,000 from the Bankruptcy Court at the same time it sought release of the other Contempt Order damages on deposit with that court.

- If the Contempt Order were vacated, then the Per Diem Order would be vacated regardless of whether the Bankruptcy Court had jurisdiction to issue it.

The Behrmanns concede each of these points.  (Appellants' Br. at 22 n.8.)

Under no circumstance could their jurisdictional challenge to the Per Diem Order

affect the amount of the daily fines, which the Behrmanns have not challenged, or

their obligation to pay the daily fines, which is entirely dependent upon the

affirmance or reversal of the Contempt Order.

The Behrmanns' disregard of the resources of the courts and the parties

warranted sanctions, particularly when considered in the context of the

Behrmanns' "extraordinarily aggressive" campaign against NHF and their

"apparent insistence on pursuing claims regardless of the costs of that pursuit, to

themselves or others," *Behrmann*, 510 B.R. at 553-54 (JA509).  *See Bast v. Cohen,*

*Dunn & Sinclair, PC*, 59 F.3d 492, 494-96 (4th Cir. 1995) (awarding sanctions on

appeal for persisting in baseless arguments in multiple courts in a legal action that

"had all the markings of a vendetta"); *Braley v. Campbell*, 832 F.2d 1504, 1513 (10th Cir. 1987) ("In a case such as the one before us, an attorney must realize, even if a party does not, 'that the decision to appeal should be a considered one, taking into account what the district judge has said, not a knee-jerk reaction to every unfavorable ruling.'") (quoting *Simon & Flynn, Inc. v. Time, Inc.*, 513 F.2d 832, 835 (2d Cir. 1975)).

That conclusion is reinforced by the fact that the Per Diem Order only imposed $18,000 in daily fines—an amount smaller than the fees and expenses incurred by the Behrmanns in appealing to the District Court (Sep. 26, 2014 Hearing Tr. 16:10-16 (JA559:10-16)), as well as NHF (Order Awarding Attorney Fees 1-2 (JA588-589)).  Thus, the Behrmanns appeared to be engaged in what the late Chief Judge Markey of the Federal Circuit characterized as "recreational litigation":

> To delay a court-required payment of $54.40, [the Appellant] paid $130.00 in filing fees in the Claims Court and this court, and spent time and money filing and preparing briefs. . . .  The unescapable conclusion is that [the Appellant] is engaged on this appeal in "recreational" litigation, misusing precious and limited resources better spent on meritorious claims of his fellow citizens to whom those resources belong.  The present appeal is frivolous.

*Beachboard v. United States*, 727 F.2d 1092, 1095 (Fed. Cir. 1984).  *See also, e.g.*, *Alessandri v. April Indus., Inc.*, 934 F.2d 1, 6-7 (1st Cir. 1991) (Breyer, C.J.) ("Finally, we note that April's basic claim on this appeal concerns its right to *delay*

payment until June 1991. . . . Given the weakness of the legal claims, and the unfairness involved in requiring [the appellee] to pay the costs of appeal, we consider this an appeal made 'for purposes of delay'" under Rule 38); *Applewood*, 884 F.2d at 1508 ("[I]n such circumstances, it seems 'unjust' for a winning plaintiff to see his judgment disappear because his opponent brings a meritless appeal, and we believe we can take that fact into account in determining what 'damages' are 'just.'"); *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1068 (Fed. Cir. 1987) ("The trivial amount of potential damages in this action, however, coupled with [the appellant]'s spurious and specious arguments and its distortion and disregard of the record and opposing authorities, indicate plainly that the present appeal does not rest on the razor's edge of frivolity, but falls clearly on the side of the frivolous.").

The District Court, which had reviewed the briefing and heard the arguments of the Behrmanns in two sets of appeals in less than a year, was well-positioned to conclude that the Behrmanns' appeal of the Per Diem Order constituted a frivolous disregard for the resources of the parties and the judiciary. Thus, even if the Behrmanns had some non-frivolous argument that the Bankruptcy Court lacked jurisdiction to enter the Per Diem Order—and they do not—the District Court still acted well within its discretion in sanctioning them for pursuing litigation only for litigation's sake.

49

## 2. The Behrmanns' Justifications for Their Appeal to the District Court Are Baseless

Despite having nothing to gain by appealing the Per Diem Order (other than creating litigation expense for NHF), the Behrmanns assert that they needed to make their jurisdictional challenges to the Per Diem Order for two reasons. Neither are credible.

*First*, the Behrmanns assert that NHF's on-the-record concession in the Bankruptcy Court that the Per Diem Order necessarily would be vacated if the Contempt Order were vacated was "disingenuous," because "it may be safely presumed" that NHF would somehow try to enforce the Per Diem Order even if the Contempt Order were vacated. (Appellants' Br. at 32.) The Behrmanns cannot legitimately rationalize their frivolous appeal by assuming that NHF would make (and the federal courts would accept) frivolous arguments of its own. NHF already represented to the Bankruptcy Court that it agreed with the Behrmanns that the Per Diem Order would be vacated if the Contempt Order were vacated; both common sense and judicial estoppel prevent NHF from arguing otherwise later on. To call NHF "disingenuous" for *agreeing with the Behrmanns* that the Per Diem Order would be vacated under those circumstances is outrageous.

*Second*, along the same lines, the Behrmanns claim that they needed to appeal the Per Diem Order "in the event (albeit unlikely) that this Court determines that it lacks jurisdiction over the pending appeal" of the Contempt Order.

50

(Appellants' Br. at 32-33 (footnote omitted).)  The Behrmanns cite no basis for that

fear, nor can they:  as they, NHF, and the District Court all recognized, a

bankruptcy court's "[c]ontempt orders, like other orders resulting from contested

matters, are final orders subject to appeal."  10 COLLIER ON BANKRUPTCY

¶ 9020.04 (16th ed. 2013).  *See also Behrmann*, 510 B.R. at 537-38 (JA466-467);

Appellants' Br. at 32 n.11.  This Court's precedent is in accord, whether

concerning the denial of a contempt motion, *see New Horizon of NY LLC*, 231 F.3d

at 152 (rejecting collateral attack on the denial of a contempt motion because the

attack "ignores the fact that the order [denying contempt] of the bankruptcy court

of February 6, 1997 was a final order" subject to appeal), or an order holding a

party in contempt, *see generally Burd v. Walters (In re Walters)*, 868 F.2d 665 (4th

Cir. 1989) (adjudicating appeal of civil contempt order entered by a bankruptcy

court).

Further, even if the Behrmanns had a reasonable basis for fearing that the

Contempt Order was not appealable, that fear in no way explains why they

challenged the Bankruptcy Court's jurisdiction to issue the Per Diem Order.  They

could have simply appealed the Per Diem Order, asserted that they were doing so

solely as a prophylactic measure in the event the Contempt Order were found to be

non-final, and then immediately sought certification of the appeal to this Court to

be consolidated with the Contempt Appeal pursuant to 28 U.S.C.

§ 158(d)(2)(A)(iii), as the Bankruptcy Court suggested.  (Per Diem Order 5 n.3 (JA434 n.3).)  That course of action would have required no briefing by the parties and little additional legal expense or waste of judicial resources, and it would have resolved any irrational doubts they may have had regarding the finality of the Contempt Order.  Instead, they embarked on a frivolous challenge to the jurisdiction of the Bankruptcy Court that required the parties, the District Court, and now this Court to waste time and energy unpacking illogical arguments on a point that the Behrmanns concede will have no practical effect on their obligation to pay the daily fines established in the Contempt Order.

Finally, the Behrmanns contend that "NHF has no rational basis to contest" their jurisdictional challenges, and that "[i]t is apparent that [NHF] is doing so only to drive up litigation costs."  (Appellants' Br. at 33-34.)  That is absurd.  Absent the Per Diem Order, there would be no final determination of the number of days they delayed in complying with the Contempt Order—a question they contested in the Bankruptcy Court.  Instead of achieving finality following this Court's review of the Contempt Order, NHF would face another round of litigation with the Behrmanns in the Bankruptcy Court regarding the daily fines, likely with another round of appeals.

Moreover, accusing NHF of seeking to "drive up litigation costs"—much like the Behrmanns' request for sanctions against NHF and its attorneys for

52

arguing that the Bankruptcy Court had jurisdiction to enter the Per Diem Order

(Per Diem Order 8 (JA437))—amounts to desperate deflection in the hope of

branding NHF as the aggressor in this dispute, with no support whatsoever.  NHF

has sought to avoid litigation costs from the outset of its dispute with the

Behrmanns, particularly the costs of litigating exculpated and discharged claims.

NHF settled the Behrmanns' claim in the bankruptcy proceeding (Bankr. Dkt.

1023-3; *Behrmann*, 510 B.R. at 533 (JA457)) and the Bankruptcy Court entered

the Discharge and Exculpation Provisions, but the Behrmanns proceeded with the

California Action anyway.  The Behrmanns refused to dismiss the action, choosing

to "to plow on with their litigation" in the face of "plain and unambiguous court

orders" and forcing the matter to a two-day contempt hearing.  (Contempt Order 33

(JA282).)  Even after being found in contempt, they *still* refused to dismiss the

offending claims from the California Action, doing "nothing" to accomplish

dismissal in the 40 days after the Contempt Order despite representing otherwise to

the Bankruptcy Court when obtaining an extension for compliance.  (Per Diem

Order 1-3, 6 (JA430-432, 435).)  And the Behrmanns proceeded with frivolous

appeals of both the Contempt Order and the Per Diem Order, forcing NHF to incur

substantial legal expense in addressing the Behrmanns' mischaracterizations of fact

and law.

The District Court recited much of this history in affirming the Contempt Order, *Behrmann*, 510 B.R. at 532-36, 553-54 (JA453-477, 507-509), and pointed out the logical flaws in the Behrmanns' attempts to explain the basis for proceeding with their jurisdictional challenges to the Per Diem Order in that court. (Sep. 26, 2014 Hearing Tr. 14:1-18:18 (JA557:1-561:18).) For the reasons set forth above, the District Court did not abuse its discretion in rejecting those explanations and concluding that the Behrmanns' appeal of the Per Diem Order was a needless "waste" of time and resources for all involved. (*Id.* at 14:10, 16:15-16 (JA557:10, 559:15-16).)

C.    **The District Court Did Not Abuse Its Discretion by Including Within the Fee Award the $2,747 in Legal Expenses NHF Incurred in Opposing the Behrmanns' Motion to Strike**

Finally, the Behrmanns challenge the $2,747 portion of the District Court's fee award, which consisted of legal fees NHF incurred in opposing their motion to strike before the District Court. (Order Awarding Attorney Fees 1-2 (JA588-589).) They appear to contend, without explanation, that the District Court entered two orders: (1) one imposing appellate sanctions for a frivolous appeal under Rule 8020; and (2) another separate order imposing "sua sponte sanctions" under Rule 11 of the Federal Rules of Civil Procedure for filing a frivolous motion to strike. (Appellants' Br. at 34-36.)

The District Court did nothing of the sort. The District Court never invoked Rule 11; it simply granted NHF's motion for appellate sanctions under Rule 8020. The District Court's statements regarding the motion to strike arose in the context of its inquiry regarding the amount of fees NHF incurred in defending the appeal, in order to assess a proper fee award. (Sep. 26, 2014 Hearing Tr. 19:6-22:18 (JA562:6-565:18).) Thus, the question is not whether the District Court followed Rule 11 in ordering the Behrmanns to reimburse NHF's fees in opposing the motion to strike, as the Behrmanns suggest, but whether the District Court abused its discretion in including those fees as part of its sanctions for the Behrmanns' frivolous appeal under Rule 8020.

It did not. Neither NHF nor the District Court were required to make a separate motion for sanctions as to each responsive filing the Behrmanns forced NHF to make in connection with the Behrmanns' frivolous appeal. The *entire appeal* was frivolous; as noted above, the District Court deemed their single jurisdictional appellate argument to be "completely frivolous," and the appeal as a whole to be a "wast[e of] everyone's time." (Sep. 26, 2014 Hearing Tr. 14:1-11 (JA557:1-11).) Thus, the preparation of *every* responsive filing by NHF in that appeal constituted legal expenses arising from the Behrmanns' violation of Rule 8020, which were properly reimbursed as "just damages" within the meaning of that Rule. *See, e.g.*, FED. R. APP. P. 38 advisory committee's note (1967)

("[D]amages are awarded by the court in its discretion in the case of a frivolous appeal as a matter of justice to the appellee and as a penalty against the appellant."); *Braley*, 832 F.2d at 1513 ("At the appellate level the bringing of the appeal itself may be a sanctionable multiplication of proceedings. Consequently, in an appropriate case the court may assess the entire costs of litigation on appeal as . . . 'just damages' under Fed. R. App. P. 38.").

There was no reason for the District Court to exclude from the fee award the expenses NHF incurred in defending against the Behrmanns' frivolous motion to strike. The motion to strike was part of the Behrmanns' needless appellate litigation, because the District Court had already addressed (and NHF had already corrected) NHF's clerical filing error, without any conceivable prejudice to the Behrmanns. (Sep. 26, 2014 Hearing Tr. 23:10-25 (JA566:10-25).) The District Court did not abuse its discretion in including NHF's fees for opposing that motion as part of "the entire costs of litigation on appeal." *Braley*, 832 F.2d at 1513.

In addition, in imposing appellate sanctions "a court may increase the sanction if a party has previously been sanctioned." *Lane v. Sullivan (In re Lane)*, 991 F.2d 105, 108 (4th Cir. 1993). The Behrmanns were previously sanctioned in the Contempt Order for violating orders of the Bankruptcy Court, and the District Court previously warned them against further frivolous appeals when it concluded that their arguments for reversal of the Contempt Order were frivolous. The

56

District Court noted that they had failed to heed that warning when they filed the Per Diem Order appeal. (Sep. 26, 2014 Hearing Tr. 14:1-9 (JA557:1-9).) Neither the Contempt Order nor the District Court's finding that their challenges to the Contempt Order were frivolous (and that sanctions for "many" of those challenges "would indeed be appropriate," *Behrmann*, 510 B.R. at 553 (JA508)) succeeded in deterring the Behrmanns' frivolous appeal of the Per Diem Order. It was not an abuse of discretion to hold the Behrmanns accountable for the full cost of the appeal to NHF, including the costs incurred in opposing their motion to strike— which only further illustrated the Behrmanns' approach of seizing upon every opportunity to litigate any issue against NHF, regardless of whether the outcome is "obvious." *Property Movers*, 31 Fed. App'x at 84.

## CONCLUSION

"Counsel must realize that the decision to appeal should be a considered one, taking into account what the [trial] judge has said, not a knee-jerk reaction to every unfavorable ruling." *Simon & Flynn*, 513 F.2d at 835. Appellants failed to give such consideration to this appeal. On the heels of a warning from the District Court to cease and desist their frivolous, vexatious litigation, they pursued a knee-jerk jurisdictional challenge that they concede serves no practical purpose, with arguments that ignored well-established jurisdictional principles, binding precedent, and common sense. For those reasons and the reasons set forth above,

the Bankruptcy Court had jurisdiction to enter the Per Diem Order, and the District Court acted within its discretion in imposing sanctions for Appellants' frivolous appeal of it. The Per Diem Order and the District Court's order imposing sanctions against Appellants should be affirmed.

Date: March 27, 2015                    Respectfully submitted,


                                        /s/ *Erika L. Morabito*
                                        Erika L. Morabito
                                        Brittany J. Nelson
                                        FOLEY & LARDNER LLP
                                        3000 K Street N.W., Suite 600
                                        Washington, DC 20007-5109
                                        Telephone: 202-672-5300
                                        emorabito@foley.com
                                        bnelson@foley.com

                                        David B. Goroff
                                        FOLEY & LARDNER LLP
                                        321 N. Clark Street, Suite 2800
                                        Chicago, IL 60654
                                        Telephone: 312-832-4500
                                        dgoroff@foley.com

                                        ***Counsel for Appellee***
                                        ***National Heritage Foundation, Inc***.

## <u>CERTIFICATE OF COMPLIANCE REQUIRED BY RULE 32(A)(7)</u>

The undersigned Counsel of Record for Appellee National Heritage

Foundation furnishes the following in Compliance with F.R.A.P. Rule 32(a)(7).

I hereby certify that this brief confirms to the rules contained in Rule

32(1)(7) for a brief provided with a proportionately spaced font.  The length of this

brief is 13,971 words.

Dated:  March 27, 2015                    Respectfully submitted,


                                          /s/ *Erika L. Morabito*
                                          Erika L. Morabito
                                          Brittany J. Nelson
                                          FOLEY & LARDNER LLP
                                          3000 K Street N.W., Suite 600
                                          Washington, DC 20007-5109
                                          Telephone:  202-672-5300
                                          emorabito@foley.com
                                          bnelson@foley.com

                                          David B. Goroff
                                          FOLEY & LARDNER LLP
                                          321 N. Clark Street, Suite 2800
                                          Chicago, IL  60654
                                          Telephone:  312-832-4500
                                          dgoroff@foley.com
                                          ***Counsel for Appellee***
                                          ***National Heritage Foundation, Inc***.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2015, I electronically filed the foregoing

**BRIEF OF APPELLEE NATIONAL HERITAGE FOUNDATION, INC.** on

behalf of National Heritage Foundation, Inc. with the Clerk of Court using the

CM/ECF system, which will then send a notification of such filing (NEF) to the

following counsel of record:

> John F. Bloss
> Higgins Benjamin PLLC
> 101 West Friendly Ave., Suite 500
> Greensboro, NC 27401
> jbloss@greensborolaw.com
>
> Lelia Winget-Hernandez
> Winget-Hernandez, P.C.
> 5570 Richmond Rd., Suite 201
> Troy, VA 22974
> lelia@winget-hernandez.com
>
> Jonathan D. Miller
> Nye, Peabody, Stirling, Hale & Miller LLP
> 33 West Mission St., Suite 201
> Santa Barbara, CA 93101
> jonathan@nps-law.com
>
> Daniel J. Schendzielos
> Schendzielos & Associates LLC
> 8547 East Arapahoe Rd., Suite J-534
> Greenwood Village, CO 80112
> denverdaniel@gmail.com

_____

/s/ *Erika L. Morabito*

FOLEY & LARDNER LLP
3000 K Street N.W., Suite 600
Washington, DC 20007-5109
Telephone:  202-672-5300
emorabito@foley.com

*Counsel for Appellee National*
*Heritage Foundation, Inc.*